IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHEN D. RICHEK, as Trustee of the RESIDUARY TRUST under the SEYMOUR RICHEK REVOCABLE TRUST, on behalf of the Trust and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BANK OF AMERICA, N.A., AND LA SALLE BANK N.A., <br><br> Defendants. | Case No.: 10-cv-6779 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion to dismiss [24] filed by Defendant Bank of America, N.A. (the "Bank" or "Defendant"), as successor to LaSalle Bank, N.A. Because Plaintiff's lawsuit is precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77p(b) and § 78bb(f)(1), Defendant's motion [24] is granted.

**I.   Background**[1]

Plaintiff Stephen Rickek ("Plaintiff"), a trustee of a residuary trust under the Seymour Richek Revocable Trust (the "Trust"), filed this action in the Circuit Court of Cook County, Illinois on behalf of a class of other persons and entities who maintained custody accounts for which LaSalle Bank or Bank of America acted as agent and received fees on cash balances transferred from the custody accounts into money market or other investment vehicles from July 18, 1985 though the later of August 1, 2009, or the date on which these daily fees were

---

[1] For purposes of Defendant's motion, the Court assumes as true all well-pleaded allegations set forth in Plaintiff's amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada*, *N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

1

eliminated. Defendant removed the case to this Court and then moved to dismiss, arguing that SLUSA permits the removal of, and precludes, Plaintiff's claim. Plaintiff disputes the applicability of SLUSA.[2]

In July 1985, Plaintiff entered into a written agreement with LaSalle Bank on behalf of the Trust to open and maintain a custodian account for the investment of moneys, securities, and other Trust properties. Under the agreement, LaSalle was to buy, sell, and exchange securities, and hold dividends, interest, and other income for the Trust, all subject to Plaintiff's instructions. Plaintiff alleges that his account had a daily cash re-investment feature (known as a "sweep" feature). Because the account had a sweep feature, cash balances remaining in the account at the end of each day—from deposits, sales of securities, dividends, interest, and other income earned—were automatically transferred or "swept" into certain investment vehicles, including shares of certain money market mutual funds, which had been selected by the Plaintiff from a list of eligible vehicles. The "approved list" of mutual funds allegedly included the Bank of America Money Market Savings Account, various Dreyfus cash management mutual funds, and other institutional cash management funds. These investment vehicles then invested the cash balances swept from the custodian account.

Plaintiff alleges that LaSalle transferred cash balances from Plaintiff's account to shares of money market mutual funds and other mutual fund investment vehicles that had undisclosed fee arrangements with LaSalle. The money market funds and other mutual fund investment vehicles in turn directly paid LaSalle daily cash re-investment fees (or "sweep fees"). Plaintiff believes that these sweep fees were as much as 35 or 45 "basis points" (0.35 or 0.45 percent) of the average daily cash balance swept from the custodian account into the particular fund. Also,

---

[2] In the alternative to their SLUSA preclusion argument, Defendant asserts additional bases for dismissal. Because the Court agrees that dismissal based on SLUSA is warranted, the Court need not address those arguments.

2

Plaintiff maintains that LaSalle did not disclose these sweep fees to Plaintiff, and that Plaintiff never agreed to the sweep fees. According to the amended complaint, Plaintiff asked Bank of America for a schedule or document reflecting sweep fee charges relating to the Trust's account and eventually was told that there was no recorded fee schedule for sweep fees, that they were "automatically deducted per each vehicle's unique fee basis," and that the Bank could not "accurately portray how sweep fees were assessed inception to current." Am. Compl. at ¶¶ 17-18.

Plaintiff alleges that he first learned of the sweep fees on June 30, 2009, when Bank of America wrote to inform him that it was eliminating the sweep fees. In August 2009, the LaSalle account was converted to a Bank of America account and the sweep fee was eliminated.

## II. Legal Standard for Rule 12(b)(6) Motions to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 569 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."

*Twombly*, 550 U.S. at 562. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**III.     Analysis**

Congress enacted SLUSA to remediate an "unintended consequence" of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): a spike in previously rare state-court litigation of class actions involving nationally traded securities. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82 (2006). The goal of the PSLRA was to curb nuisance suits and other perceived abuses of securities class actions. *Id*. at 81-82. But rather than stem the tide of such suits, the PSLRA prompted some plaintiffs (or rather their lawyers) to avoid the PSLRA's stringent pleading requirements and other provisions designed to ward off meritless suits by simply reformulating their claims as state law causes of action and bringing them in state courts. *Id*. To prevent private plaintiffs from frustrating the objectives of the PSLRA in this way, Congress enacted SLUSA, which provides:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging-
>
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b).

The SLUSA preempts and precludes a claim if it: (i) is brought by a private party; (ii) is brought as a covered class action; (iii) is based on state law; (iv) alleges that the defendant misrepresented or omitted a material fact or employed a manipulative or deceptive device or

4

contrivance; and (v) asserts that defendant did so in connection with the purchase or sale of a covered security. See 15 U.S.C. § 78bb(f)(1); 15 U.S.C. § 77p(b);[3] *Erb v. Alliance Capital Mgmt., L.P.*, 423 F.3d 647, 651 (7th Cir. 2005). A "covered class action" is a lawsuit in which damages are sought on behalf of more than 50 people. § 78bb(f)(5)(B). A "covered security" is one traded nationally and listed on a regulated national exchange. § 78bb(f)(5)(E). Pursuant to SLUSA, cases that meet these qualifications are removable. § 78bb(f)(2); see also *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 642-43 (2006).

"Consistent with Congress's intent, courts construe SLUSA's 'expansive language broadly' to prevent frustration of the PSLRA's objectives." *Brown v. Calamos*, 2011 WL 1414168, at *2 (N.D. Ill. March 14, 2011) (Bucklo, J.) (quoting *Daniels v. Morgan Asset Management, Inc.*, 2010 WL 4024604, at *5 (W.D. Tenn. Sept 30, 2010) and *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 309 (6th Cir. 2009)); see also *Dabit*, 547 U.S. at 86. In particular, the Supreme Court held in *Dabit* that the "in connection with the purchase or sale of securities" requirement should be construed broadly to preclude suits by holders of securities, not just purchasers and sellers. 547 U.S. at 86-87. Similarly, as a general rule, litigants cannot avoid SLUSA preemption by bringing claims that effectively incorporate securities claims under state law theories. *Appert v. Morgan Stanley Dean Witter, Inc.*, 2009 WL 3764120, at *5 (N.D. Ill. Nov. 6, 2009); *Rabin v. JP Morgan Chase Bank*, 2007 WL 2295795, at *6 (N.D. Ill. Aug. 3 2007). "Consequently, when analyzing SLUSA preclusion, courts are guided by the substance rather than the form of a claim." *Id.*

Plaintiff does not dispute that this is a "covered class action," that it is based on state law, or that the securities in question are "covered securities." Rather, he argues that the amended

---

[3] SLUSA amends the Securities Act of 1933 and the Securities Exchange Act of 1934 in "substantially identical ways." *Dabit*, 547 U.S. at 82 n.6.

complaint does not allege that Defendant misrepresented or omitted a material fact or employed a manipulative or deceptive device or contrivance "in connection with" the purchase or sale of securities. Plaintiff contends that the purchase and sale of mutual fund shares was merely incidental to Defendant's alleged misconduct. In other words, Plaintiff does not deny that his class action claims are predicated upon allegations of misstatements, omissions, deception, and manipulation (nor does he argue that these allegations are inadvertent or ancillary to Plaintiff's state law class action claims). However, Plaintiff contends that SLUSA does not preempt his claims because the statute's "in connection with" requirement is narrow and preempts only those state law class claims where: (1) misrepresentations, omissions, deceptions, or manipulations are alleged to have influenced or caused an "investment decision" by a plaintiff; (2) a plaintiff is dissatisfied with a "discretionary" investment made for him by the defendant; or (3) a plaintiff's factual allegations could give rise to an implied private right of action under federal securities laws. Defendant in turn argues that Plaintiff's position is irreconcilable with the plain language of the statute, the Supreme Court's decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006), and other controlling legal authorities, and that SLUSA is much broader than Plaintiff asserts.

Under *Dabit*, 547 U.S. at 87-88, the Court may not construe SLUSA in a manner that would "create" any "additional, implied exceptions." In *Dabit*, the Supreme Court held that SLUSA's "in connection with" requirement should receive the same "broad construction" given to the "in connection with" language of Section 10(b) of the Exchange Act and Rule 10b-5. The Court further explained that this broad construction extended "flexibly" to prohibit any misstatements and omissions touching upon the purchase or sale of a security—"whether by the plaintiff or someone else." *Id.* at 85. In reaching this conclusion, the Supreme Court expressly

6

considered and rejected a narrower reading of the statutory language similar to the one advanced by Plaintiff—*i.e.*, a reading that assumes that SLUSA's "in connection with" language embraces only those particular cases where a plaintiff has made an investment decision to buy or sell securities in reliance on misstatements, omissions, or deceptive or manipulative conduct and where a plaintiff's factual allegations demonstrate all the other elements necessary to support an implied private right of action under federal securities laws. See *Dabit*, 547 U.S. at 84-88.

In this regard, *Dabit* closely followed *SEC v. Zandford*, 535 U.S. 813 (2002). In *Zandford*, the SEC brought a civil action against a broker who repeatedly sold his clients' stockholdings and diverted the sales proceeds to his own accounts. The Supreme Court held that the broker's scheme occurred "in connection with" the sale of the securities, even though his victim did not make any investment decision to purchase or sell a security "in reliance" on the broker's misrepresentations and omissions or authorize such transactions. *Id.* at 820. The broker's misrepresentations and omissions to his clients "coincided with the sales themselves," and each transaction was deceptive because the diversions of sales proceeds were "neither *authorized* by, nor *disclosed* to" the broker's clients. *Id.* at 820-21 (emphasis added). Thus, under *Dabit*, "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." *Dabit*, 547 U.S. at 85; see also *Siepel v. Bank of America, N.A.*, 526 F.3d 1122, 1127 (8th Cir. 2008) (explaining that "[w]hen [*Dabit*] rejected the *Blue Chip Stamps* limitation [on implied private rights of action under Section 10(b) and Rule 10b-5], [it] rejected wholesale the proposition that limitations on private Rule 10b-5 actions may be applied to limit the scope of SLUSA"); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 312 (6th Cir. 2009) (noting that under *Dabit*, SLUSA precludes even state law claims that would not meet the 'policy'-based standing limitations the Court has attached to Rule 10b-5"); *U.S.*

*Mortgage, Inc. v. Saxton*, 494 F.3d 833, 843-45 (9th Cir. 2007) (holding that it was immaterial that the plaintiffs did not personally make an investment decision to purchase, sell, or hold any stock in reliance on deceptive statements or conduct); *Rabin v. JPMorgan Chase Bank, N.A.*, 2007 WL 2295795, at *5-8 (N.D. Ill. Aug. 3, 2007); *Daniels v. Morgan Asset Management, Inc.*, 2010 WL 4024604 (W.D. Tenn. Sept. 30, 2010) (finding SLUSA preemption where plaintiffs alleged that defendants breached various duties by investing assets from the trust and custodian accounts in shares of expensive and poorly performing mutual funds and then failing to disclose fees and other compensation that the bank allegedly received from the funds).

Plaintiff attempts to distinguish this case from the above-cited authorities by arguing that in those cases there was no allegation of a breach of a "written contract" or that the defendants made "discretionary" investments on the plaintiff's behalf. Yet a review of these cases indicates that Plaintiff's arguments simply are incorrect: the cases cited above did involve allegations that the defendants breached agreements and did assert claims for breach of contract, breach of fiduciary duties, and unjust enrichment comparable to Plaintiff's claims. Furthermore, the cited authorities do not turn on whether the plaintiff was dissatisfied with a "discretionary" investment made on his behalf by the defendant. Rather, SLUSA applied because the alleged misstatements and omissions touched upon and coincided with the purchase or sale of a covered security.

In addition to trying to distinguish the cases offered by Defendant, Plaintiff relies on *Gavin v. AT&T Corp.*, 464 F.3d 634 (7th Cir. 2006), to support his construction of SLUSA's "in connection with" requirement. *Gavin* was a consumer fraud action arising after a merger between AT&T and MediaOne. *Gavin*, 464 F.3d at 638-39. As a result of the merger, MediaOne's shareholders became the beneficial owners of AT&T stock. *Id.* Several months after the merger, AT&T hired a "post-merger clean-up" specialist to notify former MediaOne

shareholders about the process for exchanging their old MediaOne stock certificates for new certificates representing the AT&T shares that they had acquired through the merger. The service provider notified shareholders of a fee-based process for obtaining new AT&T certificates but failed to inform them about an alternative, free process. *Id.* The plaintiffs in *Gavin* complained that defendants' conduct constituted fraud under state law and argued that SLUSA did not apply. *Id.* The Seventh Circuit agreed that the post-merger clean-up service at issue had nothing to do with the purchase or sale of any security but only with the process for exchanging stock certificates. The court further held that SLUSA did not apply because the alleged fraud of failing to inform MediaOne shareholders of the free option occurred long after the securities transaction—the merger—took place. The court concluded that the connection between the defendants' conduct and the securities transaction was too attenuated to satisfy even the post-*Dabit,* broadly-interpreted "in connection with" requirement. *Id.* at 638–639.[4]

In contrast to *Gavin*, the essence of Plaintiff's amended complaint is that the Bank made misrepresentations and omitted material facts regarding conflicts of interest and fees *relating to* the transfer of trust assets into mutual funds. See also *Wells Fargo Bank, N.A., v. Superior*

---

[4] Plaintiff also cites *Fishback v. Memory Gardens Management Corp.*, 2008 WL 2037308 (S.D. Ind. May 12, 2008) and *Kurz v. Fidelity Management & Research Co.*, 556 F.3d 639 (7th Cir. 2009), in support of his construction of SLUSA's "in connection with" requirement. In *Fishback v. Memory Gardens Mgmt. Corp.*, the plaintiff's complaint alleged looting of a trust fund created to finance the maintenance of cemeteries, but it contained no allegations "link[ing]" the alleged looting to the purchase or sale of any covered security in the trust account. 2008 WL 2037308, at *1 (S.D. Ind. May 12, 2008). The court found SLUSA inapplicable, but the five-paragraph order contains no substantive discussion of the factual allegations and no analysis of SLUSA's plain language, *Dabit*, *Zandford*, or any of the other authorities cited by Defendant. Plaintiff also contends that *Kurz v. Fidelity Mgmt. & Research Co.,* 556 F.3d 639, 641 (7th Cir. 2009), "recognize[s] that SLUSA does not displace contract law claims." *See* Pl. Resp. at 9. In *Kurz*, the Seventh Circuit affirmed the dismissal of a putative class action complaint for breach of contract based on SLUSA. The plaintiff argued that SLUSA did not apply to his putative class action because his "suit rest[ed] on contract law rather than 'a misrepresentation or omission of a material fact;'" however, the Seventh Circuit held that "[Plaintiff's] argument [was] frivolous, given *Dabit* * * * and *SEC v. Zandford* * * *." *Id.* (citations omitted).

9

*Court*, 159 Cal. App. 4th 381, 390-91 (Cal. App. Ct. 1st Dist. 2008) (rejecting narrow construction advanced by plaintiffs and distinguishing *Gavin* from situations where a defendant is alleged to have used account assets to purchase mutual shares and received and retained undisclosed fees and compensation in connection with that securities transaction). Plaintiff's amended complaint alleges that LaSalle decided which mutual funds to include as investment options for the custodian account's sweep feature, giving Plaintiff an "approved list" from which to choose. The approved list included mutual funds, like the Bank of America Money Market, that had agreed to pay fees in exchange for the purchase of mutual fund shares. Am. Compl. ¶¶ 2, 14, 26. The complaint also alleges that LaSalle had a legal duty to disclose any fees that it would receive from the money market mutual funds or other registered investment companies in exchange for investing daily cash balances in shares of the funds, and that LaSalle should have provided such information to Plaintiff both before and after cash balances were used to purchase mutual fund shares. Am. Compl. ¶¶ 1-2, 10, 23(a) & (b), 28(a) & (b), 35, 40-41. Further, Plaintiff alleges that LaSalle received and retained these undisclosed fees directly from these mutual funds (not from Plaintiff's custodian account) in exchange for the Bank's use of daily cash balances to purchase shares of the funds: "Defendants were aware that they were receiving substantial benefits in the form of re-investment (sweep) fees based on the value and earnings of the cash balances that were transferred to investment vehicles from Custody Accounts." See Am. Compl. ¶¶ 2, 15, 23(a) &(b), 28(a) & (b), 37, 40-41. According to the amended complaint, LaSalle never disclosed or reported these fees to Plaintiff either on a fee schedule provided in advance of a securities transaction or an account statement issued after a securities transaction. *Id.*

Additionally, Plaintiff maintains that LaSalle's misstatements, omissions, and related misconduct respecting the undisclosed fees were material to his decision to maintain a custodian account with the Bank and continue to have the Bank reinvest daily cash balances in these mutual fund shares. *Id.* ¶¶ 1-2, 10, 14-18; Pl. Mem. in Opp. 11. Finally, and perhaps more importantly for present purposes, Plaintiff ties his alleged injury to the value of the fees that Defendant allegedly received—fees that are alleged to be based expressly on the value of the mutual fund shares purchased for his account. Am. Compl. ¶¶ 2, 15, 18, 29-31, 38, 40-43, 46-48. By acknowledging that the fees generated were dependent on the value of the shares purchased, Plaintiff cannot escape the conclusion that Defendant's alleged scheme occurred "in connection with" the sale of the securities. Simply put, every aspect of the conduct at issue touches on or coincides with the purchase of mutual fund shares for Plaintiff's custodian account.

In sum, Plaintiff's amended complaint is replete with allegations that the Bank failed to disclose (or omitted) details regarding fees and the conflicts of interest inherent in the Bank's "approved list" of mutual funds, and that these omissions caused injury to Plaintiff. Put another way, Plaintiff alleges that the Bank failed to disclose the financial gain retained by the Bank as a result of these transfers. This alleged misconduct occurred contemporaneously with the security transaction of investing[5] the trust's assets into mutual funds. Thus, at a minimum, the Bank's alleged fraudulent conduct "coincided" with a securities transaction (*Dabit*, 547 U.S. at 85), and Plaintiff's claims are precluded by SLUSA.

---

[5] Plaintiff amended his complaint to allege that cash balances were "transferred," rather than "invested," in shares of money market mutual funds and other investment vehicles. Compare Compl. at ¶¶ 1-2, 14-15 with Am. Compl. at ¶¶ 1-2, 14-15. Regardless of the word used to describe the process, the substance of the act of transferring the trust's assets into mutual funds is that they are invested, or re-invested, into mutual funds.

## IV. Conclusion

For the reasons set forth above, the Court grants Defendant's motion to dismiss [24]. Judgment is entered for Defendants and against Plaintiff.

Dated: August 4, 2011

_____
Robert M. Dow, Jr.
United States District Judge